ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

SARAH J. SIMS, MICHAEL E. SIMS, )
And all other persons similarly situated, )
) CIVIL ACTION FILE
Plaintiffs )
v. ) NO. CV108 064
)
SELECT PORTFOLIO SERVICING, INC. )
And JP MORGAN CHASE BANK, AS )
TRUSTEE OF THE TRUMAN CAPITAL )
MORTGAGE LOAN TRUST 2004-2 )
ASSET BACKED CERTIFICATES )
SERIES 2004-2, )
)
Defendants )

## CLASS ACTION COMPLAINT
## FOR INJUNCTIVE AND DECLARATORY JUDGMENT RELIEF

NOW COME the plaintiffs, for themselves and all persons similarly situated, and bring this their complaint against the defendants and show as follows.

### PARTIES, JURISDICTION AND VENUE

1. That jurisdiction over the claims set forth herein on behalf of the plaintiffs and all other persons similarly situated is based upon federal law and this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Jurisdiction on the breach of contract claims seeking an accounting will be pendent state law claims for breach of contract and jurisdiction will be based on diversity of citizenship under 28 U.S.C. §1332 with the amount in controversy being over $75,000, in that the named plaintiffs are Georgia residents and the corporate defendants are

domiciled in Utah and New York. The named plaintiffs are domicile in and residents of the State of Georgia.

2. That defendant Select Portfolio Servicing, Inc. ("Select Portfolio") is a loan servicing corporation who has a principal place of business located at 3815 S.W. Temple, Salt Lake City, Utah, 84115, and is a foreign corporation authorized to do business in the State of Georgia with a registered agent for service of process being Corporation Services Company, 40 Technology Parkway, South, No. 300, Norcross, Gwinnett, Georgia, 30092. That defendant JP Morgan Chase Bank, as Trustee of the Truman Capital Mortgage Loan Trust 2004-2 Asset Backed Certificate Series 2004-2 ("JP Morgan Chase Bank") is a trust that can be served by serving JP Morgan Chase Bank's registered agent for service of process in Georgia, CT Corporation System, 1201 Peachtree Street., NE, Atlanta, Georgia 30361, and is subject to the jurisdiction of this court.

3. That venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the claims of the named plaintiffs arise out of conduct of the defendants relating to the collection and adjustments of interest rates on a loan that is secured by real property where the plaintiffs reside in Burke County, Georgia, which is located in the Southern District of Georgia.

II. FACTUAL BACKGROUND

4. That on January 25, 1998, the plaintiffs entered into a security deed and loan transaction with First Union National Bank in which they borrowed $85,872.00 pursuant to an adjustable rate mortgage repayable for 180 months with payments of $901.09, all as shown by Exhibit "A" attached hereto.

5. That the real property transaction was secured by a security deed, all as shown by Exhibit "B", whereby certain real property owned by the named plaintiffs consisting of their home place in Burke County, Georgia was conveyed as security for the loan.

6. That the original loan carried an interest rate of 9.5% and was not supposed to be adjusted until after five (5) years.

7. That the Note was based upon the Wall Street Prime Rate plus one (1%) percent, all as shown by Exhibit "A."

8. That the note provided on page two that the rate would not change more than once a month.

9. That while the note contains a provision to arbitrate on page 3, the arbitration agreement clause does not refer to the Federal Arbitration Act and is, therefore, construed under Georgia law, and the clause agreement to arbitrate is not initialed by all signatures at the time of the execution and, therefore, is not applicable under O.C.G.A. § 9-9-2(c)(8).

10. That the security deed form was not the uniform form that is approved by the Federal Home Loan Mortgage Corporation (FreddieMac) for the secondary market.

11. That the security deed form was a security deed form that was used in construction loans and other non-securitized real estate loans, even though this was a long-term 15-year note and security deed and was sold in the secondary market.

12. That this note and security deed were sold in the secondary market as part of a securitization package.

13. That the named plaintiffs have prepared an amortization schedule for a loan of $85,872.00, repayable over 180 months at a rate of 9.5%. Under this amortization schedule, the loan balance after five (5) years would have been $69,297.56 in March of 2003 and would have been $68,949.47 in April of 2003, and would have been $68,598.62 in May of 2003, and in June of 2003 would have been $68,244.99, all as shown by Exhibit "C".

14. That the servicing of the loan was transferred from First Union to Fairbanks Capital Corporation (hereinafter "Fairbanks").

15. That on June 17, 2003, Fairbanks notified the named plaintiffs for the first time of a rate change that effective April 20, 2003, the principal and interest on the loan would be $522.77, which was based on a prime rate of 5.25% and with a margin of 1% being added. Attached hereto and marked Exhibit "D" is a copy of that letter.

16. That this was the first adjustment made to plaintiffs' loan that was communicated to Plaintiffs.

17. That the loan servicers began billing the plaintiffs for $522.77 per month, as shown by Exhibit "D."

18. That the Wall Street Prime Rate changed numerous times since February 25, 1998, all as shown by Exhibit "D-1."

19. That the figure given to the plaintiffs was the payment that they paid believing that this would pay their loan out in a total of 180 months or until another rate change.

20. That defendant Select Portfolio and the other servicers prior to defendant Select Portfolio obtaining servicing rights have not notified the plaintiffs of all of the rate changes.

21. That defendant Select Portfolio never adjusted the number and amount of payments, except that one (1) time and never communicated subsequent changes to the plaintiffs.

22. That the named plaintiffs have continued to pay that sum of $522.77 per month as directed by the servicer.

23. That the named plaintiffs have recently determined that the correct amount of the payment might have been $780.42 per month on July 1, 2003.

24. That plaintiffs have continued to pay the $522.77 per month based upon that one (1) change received in June 2003.

25. That subsequent to making this loan, the named plaintiffs sought protection of the Bankruptcy Court and filed a Chapter 13 case, being Case No. 02-10699-SDB filed 02/28/02, with the debtor being discharged 07/19/07.

26. That servicing has been charged and transferred while in Chapter 13 and additional charges not authorized and not approved by the court and not permitted by contract have been added to their loan contract.

27. That the named plaintiffs have taken the balance from the amortization schedule (Exhibit "C") and reduced the interest rate to a 6.25% rate, which would be the rate quoted in Exhibit "D" by Fairbanks, and have recomputed their loan to show that it was paid out at that rate for the balance of the loan, and that the correct payment would have been $780.42 in order to have the loan paid out, all as shown by Exhibit "E" – not the $522.77 given to them.

28. That the prime rate has changed approximately forty-eight (48) times since this loan's inception, as shown by Exhibit "D-1."

29. That for each and every month, the named plaintiffs were billed by Fairbanks or by the other servicers for $522.77 (a difference of $257.65) and there was no rate or payment reduction communicated to them.

30. That the prime rate was reduced to 4.0 on June 27, 2003, and the correct rate should have been 5.0 – not 6.25.

31. That the loan servicer has caused confusion and has breached the terms of the note numerous times.

32. That the loan servicing was thereafter transferred to GMAC Mortgage and the named plaintiffs were advised by GMAC Mortgage that the interest rate was 5.25% and that the maturity date remained the same, all as shown by Exhibit "F".

33. That with the transferring of servicing from First Union to Fairbanks to GMAC to Select Portfolio, there has been so much confusion and so many errors created by defendants that it has been impossible for the named plaintiffs to determine exactly what amount is owed and whether payments have been properly applied.

34. That defendant Select Portfolio should be required to correct its books and records and to send the proper notices of interest rate changes, balances and change of terms to the named plaintiffs and others like them.

35. That while in Chapter 13, the defendant filed multiple motions for relief from stay and withdrew each one, and made various inconsistent representations concerning the alleged amount of the debt to the court.

36. That based upon information and belief, charges for attorney fees for filing and withdrawing motions for lift of stay were charged back to the plaintiffs' account, even when defendant Select Portfolio was wrong.

37. That the named plaintiffs continued to pay the amount of the payment told to them of $522.77 per month and paid through the time that the Chapter 13 case was concluded on August 6, 2007, and the plaintiffs have continued to try to get the amount of the alleged debt corrected, all without success, with the last letter being received from their attorney dated May 2, 2008, as shown by Exhibit "G."

38. That the named plaintiffs are currently paying payments, but are receiving inconsistent and varying explanations of what their payments are, what is owed or what their payments should have been.

39. That in addition, they are now being threatened with foreclosure and a foreclosure ad is running, even though the correct property is not described.

40. That despite the fact that this investigation is ongoing according to the letter dated May 2, 2008, the non-judicial foreclosure ad attached as Exhibit "H" is being run for a sale the first Tuesday in June 2008, to wit: June 3, 2008, and is being conducted on behalf of the holder, JP Morgan Chase Bank, as Trustee of the Truman Capital Mortgage Loan Trust 2004-2.

41. That the foreclosure ads are not in compliance with O.C.G.A. § 23-2-114.

42. That attached as Exhibit "H-1" is the ad run in The True Citizen on May 14, 2008, and attached as Exhibit "H-2" is a copy of the ad from the May 21, 2008 in The True Citizen. There are substantial differences or omissions that chill any proposed sale.

43. That the named plaintiffs are not in default of their note and security deed and have paid, and continue to pay, the $522.77 they were told to pay.

44. That defendant Select Portfolio has recently returned recent payments made by the plaintiffs.

45. That the property being described for foreclosure includes a 1-acre parcel that was sold to their son and daughter-in-law that First Union released while it was servicing the loan, and this foreclosure ad seeks to sell property not subject to this security deed.

46. That prior to the plaintiffs contacting their attorney, they made numerous qualified written requests for correction.

47. That defendant Select Portfolio, through a pattern of disregarding the requirement of the Real Estate Procedures Act (RESPA), has violated its duty to respond and correct errors made by it that have continued to compound, all as required by 12 U.S.C. §2605(e).

48. That through the method of servicing (or lack thereof), no proper investigation has ever been conducted as required by 12 U.S.C. §2605(f) and 24 CFR §3500.21(e).

49. That there was no escrow account, even though defendant Select Portfolio has referred to an escrow account.

50. That the plaintiffs have no adequate remedy at law and will lose their home at the non-judicial foreclosure if a temporary injunction is not issued enjoining this sale pending an accounting by both defendants.

51. That the named plaintiffs have continued to pay the $522.77 per month that was represented to them as their regular payment, all as shown by Exhibit "D" attached hereto, and do not believe that their loan is in default.

52. That attached hereto and marked Exhibit "I" is a copy of a letter dated January 22, 2008 in which Select Servicing states that there is a $430.65 unapplied balance and, in which it states that the payments are now 27 payments behind, even though this is inconsistent with the fact that the named plaintiffs have paid the amounts that they were told to pay as represented to them by the loan servicer.

53. That confusion has been created by the servicers not complying with the terms of the variable interest rate note and not properly adjusting the rate and payment amount and notifying the plaintiffs about that.

54. That attached hereto and marked Exhibit "J" is a statement dated February 6, 2008 showing the last amount received on January 22, 2008 was $522.77, but again showing that there is a substantial amount due, even though the named plaintiffs are paying what they have been told to pay.

55. That the named plaintiffs have paid and continue to pay the amount that they believe is due as told by their servicer.

56. That defendant Select Portfolio is a loan servicer as that term is used in the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, and is subject to the provisions of 12 U.S.C. § 2605 and the regulations promulgated there under in 24 CFR §3500.21(e)(4).

57. That the loan servicer has made adverse reports against the named plaintiffs on their credit reports which are inconsistent with the fact that they have been paying the payments in the amount they were told to pay.

58. That these reports have been made during a time that defendant Select Portfolio was refusing to respond to the qualified written requests of the named plaintiffs, all in violation of 12 U.S.C. §2605(e)(3).

59. That the loan, as shown by the documents attached hereto, has in some way been converted from a loan that was supposed to pay out in 180 months, based on an adjustable rate mortgage, to a loan that has a negative amortization and a balloon payment.

60. That the payment amount of the note, as set forth in the note (Exhibit "A") under "Variable Rate Payment Changes," cannot change except every sixty (60) months, and this loan is not in default.

61. That despite repeated requests, the loan servicer has not made corrections to the plaintiffs' account and continues to ignore those requests while proceeding with a non-judicial foreclosure.

62. That defendant Select Portfolio has never notified the plaintiffs that any error was made by its previous loan servicer, Fairbanks, in advising the named plaintiffs that they had a $522.00 per month payment.

63. That defendant Select Portfolio has failed to inform the named plaintiffs of exactly what amount they must pay in order to have their loan modified as consistent with the proper payment that it should have been modified to in 2003, all as required by RESPA and the regulations promulgated thereunder.

64. That based on information and belief, the named plaintiffs have had insurance force-placed upon them, even though they have always maintained homeowners insurance through Georgia Farm Bureau in Burke County, Georgia, and have properly provided insurance to the loan servicer as required.

65. That defendants have charged certain of its bankruptcy expenses and other costs back to the plaintiffs, even though they were not authorized or approved by the Bankruptcy Court and were authorized by the note or the security deed.

66. That defendant Select Portfolio has used false or deceptive misrepresentations in connection with the collection of a debt, including falsely representing the amount that would be past due – when, if any mistake in monthly payments were made, it was made because of the actions of the defendant or its predecessor in servicing or not servicing this loan.

67. That this constitutes a violation of 15 U.S.C. § 1692 and is a violation of the terms and provisions of the modified order, Exhibit "K".

68. That defendant Select Portfolio has known or should have known that there has been incorrect information in connection with previous servicing of this loan and that this misinformation has been compounded by defendant Select Portfolio.

69. That defendant Select Portfolio, in connection with its reporting relating to the plaintiff's credit, has made false and misleading credit reports in violation of violation of 15 U.S.C. § 1681, as shown on Exhibit "L."

70. That various unauthorized charges have been made to this account that make the correction default and this confusion was created by defendant's continued violation of the terms of the note and failure to follow the requirements of RESPA and its regulations.

71. That based upon information and belief, defendant Select Portfolio has an outstanding agreement with its foreclosure Bankruptcy Specialist, McCalla Raymer, LLC in which the defendant delegates servicing responsibilities.

72. That such agreements are designed to shift servicing costs and responsibilities from the servicer to the borrower.

73. That such agreements are economically beneficial to both their corporate foreclosure and collection law firm and are designed to make it difficult for the plaintiffs and others like them from obtaining information about their loans or reinstating their loans, as permitted by law or contract.

74. That based upon information and belief, defendant Select Portfolio has agreements with McCalla Raymer, LLC, in connection with handling all of its foreclosures in the State of Georgia and in other states or with other entities that are interrelated with it, which agreement authorizes McCalla Raymer, LLC or entities related to it to have access to certain account information such as that of the named plaintiffs.

75. That defendant Select Portfolio, acting through McCalla Raymer, LLC or its related entities, notified the named plaintiffs on April 10, 2008 that they are subject to foreclosure, all as shown by Exhibit "M".

76. That the named plaintiffs have paid the payments provided for by the note that they were told they owed and paid those payments in a timely fashion, and any errors in connection with their failure to pay payments or the incorrect amount have been created by the loan servicers who have refused and continue to refuse to correct those errors.

77. That servicing responsibility has now been delegated to McCalla Raymer, LLC and it is impossible to get defendant Select Portfolio or the holder of the note and security deed, defendant JP Morgan Chase Bank, to correct these errors.

78. That errors have occurred in the accounting of payments made and applied, all contrary to the provisions of federal law and contrary to the provisions of the contract.

79. That the named plaintiffs respectfully request on behalf of themselves and others that the practices that have led to this ARM mortgage being improperly calculated and with payments being improperly calculated be corrected, not only for themselves, but for all others similarly situated.

80. That under the provisions of O.C.G.A. § 23-1-12, the equity of the party misled is superior to that of the person who misleads him.

81. That when one of two persons must suffer by the act of a third person, the person who put it in the power of the third person to inflict the injury shall bear the loss. O.C.G.A. §23-1-14.

82. That at all times hereunder, defendant Select Portfolio has been the agent of defendant JP Morgan Chase Bank.

83. That based upon information and belief, there are outstanding servicing agreements between defendant Select Portfolio and defendant JP Morgan Chase Bank where defendant Select Portfolio directs the exercise of the power of sale under the deed to secure debt for defendant JP Morgan Chase Bank through its corporate law firm..

84. That powers of sale under security deeds must be exercised fairly and are not being exercised fairly here or elsewhere.

85. That the pending foreclosure by defendant JP Morgan Chase Bank is not being exercised fairly.

86. That this pending non-judicial foreclosure in the State of Georgia involving an ARM should not be allowed to proceed until the errors determined by the Court to have affected the loan of the named plaintiffs be corrected and that individuals who are subject to loan servicing by defendant Select Portfolio have their loans corrected prior to any foreclosure, including, but not limited to this security deed, but also ARM mortgages and security deeds being serviced by defendant Select Portfolio for other holders.

87. That defendants should both be required to account to the named plaintiffs for payments made, payments applied and charges added to their loan.

### III. CLASS ACTION ALLEGATIONS

88. Plaintiffs bring the claims set forth in this case on behalf of themselves and all other persons similarly situated as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The persons constituting this class are so numerous as to make it impractical to bring all of them before the Court. There are questions of law and fact common to the class; the

claims of the representative party are typical of the claims of the class; and the representative party will fairly and adequately represent the interests of the class.

89. That this class action is being brought both as a 23(b)(2) and a 23(b)(3) class seeking both equitable relief and damages.

90. Questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

91. That the class sought to be certified is a multi-state class, since security deeds and mortgages being serviced by defendant Select Portfolio encompass loans made in different states and are held by different trusts.

92. That pursuant to Local Rule 23.1(b)(i), the approximate size is in the thousands.

93. That pursuant to Local rule 23.1(b)(1), the members of the class will have to meet all of the below criteria:

    (a) Own homes that are subject to mortgages or security deeds that have been sold by the original holder and are being serviced by defendant Select Portfolio; and

    (b) Are ARM loans.

94. That pursuant to Local Rule 23.1(b)(ii), the basis upon which the plaintiffs will be an adequate representative is because they have a loan being serviced by defendant Select Portfolio, have paid the payments that they were told to pay and are able (with the help of local bankers) to explain the system-wide errors that have caused these mistakes in servicing.

95. That the common questions of law will relate to the loan servicers' duty under RESPA to properly, service mortgage loans, and the manner in which that is or is not done will be common to the class.

96. That defendant Select Portfolio services its ARM portfolio in the same manner and that common questions predominate should be shown by the fact that when servicing loans are not separated by state, but only by investor and defendant Select Portfolio uses common procedures for all.

97. That a class action is superior in that the individual charges each month wrongfully charged do not warrant separate action being filed by each borrower, against each investor or buyer and only by combining their litigation can policies underlying RESPA be enforced.

98. That the plaintiffs are unaware of individual actions being filed.

99. That the management of this class should be no more difficult than the duties of defendant Select Portfolio in collecting thousands and thousands of debt and servicing these loans and the management can be accomplished by elective means.

100. That under Rule 23(b)(2), as far as injunctive relief is concerned, the claims can be aggregated for purposes of the jurisdictional amount of $75,000 for purposes of diversity jurisdiction.

### Count I – Injunctive Relief and Accounting

101. That both defendants should be temporarily, preliminarily and permanently restrained and enjoined from proceeding with the non-judicial foreclosure against the plaintiffs.

102. That defendant Select Portfolio be required to account to the named plaintiffs for all the payments made and all of the additional charges made to their loan and charges that are not legally imposed together with interest be removed, all at the costs of defendant Select Portfolio.

103. That defendant Select Portfolio and defendant JP Morgan Chase Bank be enjoined from continuing with any foreclosure action or any ARM being served by it until a court appointed monitor or receiver reviews their procedures, their method of accounting and assessment of charges against the named plaintiffs and others like them.

104. That equitable relief be granted to all members of this class whose loans are being serviced by defendant Select Portfolio, that incorrect or illegal charges be removed, and that interest rates and charges be corrected.

### Count II – Breach of Contract

1. That the plaintiffs incorporate the allegations in paragraphs 1-104 of Count I.

2. That the court hold that the loan contract of the named plaintiffs was breached by defendant Select Portfolio and defendant JP Morgan Chase Bank.

3. That the named plaintiffs recover damages for said breach, including damages for emotional distress.

4. That each and every member of the class whose ARM loan agreement was breached in a similar manner by defendant Select Portfolio or defendant JP Morgan Chase Bank be awarded damages permitted by law of each state where the loan originated.

### Count III - RESPA

1. That the plaintiffs incorporate the allegations in paragraphs 1-104 of Count I.

2. That the court award the plaintiffs and all those similarly situated actual damages, penalties and attorney fees for the violation of the Real Estate Settlement Procedures Act and its regulations, 12 U.S.C. §2605(f).

### Count IV – Wrongful Foreclosure - Slander

1. That the plaintiffs re-allege the allegations in paragraphs 1-104 of Count I.

2. That the named plaintiffs have been damaged by defendants wrongfully exercising the power of sale and slandering their names and titles.

3. That the actions of defendants have been done with callous indifference to consequences and are willful.

4. That the named plaintiffs recover actual damages, punitive damages and attorney fees from both defendants.

WHEREFORE, plaintiffs pray:

(a) That the court issue a TRO preliminary injunction and permanent injunction enjoining the non-judicial foreclosure of plaintiffs' home;

(b) That this action be certified as a class under Rule 23(b)(2) and Rule 23(b)(3);

(c) That equitable relief and an accounting be awarded for each member of the class;

(d) That the court appoint a monitor at defendants' expense to monitor defendant Select Portfolio's servicing;

(e) That defendants be required to identify to the plaintiffs the members of the class;

(f) That the named plaintiffs and the class recover damages for breach of contract;

(g) That the named plaintiffs and the class be awarded actual damages, penalties and attorneys fees under RESPA and the Fair Credit Reporting Act;

(h) That the plaintiffs be awarded damages and attorney fees for wrongful foreclosure and slander.

Respectfully submitted this 23rd day of May, 2008.

A. MONTAGUE MILLER, ESQ.
Georgia State Bar No. 506100
JOHN B. LONG, ESQ.
Georgia State Bar No. 457200

Attorneys for Plaintiffs

OF COUNSEL:

TUCKER EVERITT LONG BREWTON & LANIER
P. O. BOX 2426
453 GREENE STREET
AUGUSTA, GA 30903
(706) 722-0771
(706) 722-7028 Fax